MARY ELLEN MURPHY, RESPONDENT, v. FIDELITY NATIONAL BANK AND TRUST COMPANY, APPELLANT.—49 S. W. (2d) 668.

Kansas City Court of Appeals. May 2, 1932.

*W. H. Senner* and *Madden, Freeman & Madden* for respondent.

*Harris & Koontz* for appellant.

CAMPBELL, C.—Plaintiff recovered a judgment for $3,000 for personal injuries, alleged to have been sustained by her on November 3, 1928, when she fell to the floor of defendant's banking room, by reason of the sudden slipping of a rubber mat, upon which she stepped, while an invitee of defendant.

The petition alleged general negligence; the answer was a general denial.

The evidence is that plaintiff, at the time of injury, was and for a long time had been a customer of defendant bank, and had occasion on that day to visit the defendant's premises. She first went to the rest room, the floor of which was on a slightly higher level than that of the banking room. Returning to the banking room from the rest room, she passed along a corridor, then stepped down one step from the corridor to the banking room floor, which was of title. At the place where she stepped a rubber mat had been provided by the bank, which rubber mat was close to the riser of the step. When plaintiff stepped upon the mat, it slipped away from the step, twisting her foot, and caused her to fall heavily to the floor.

At the time and immediately thereafter, plaintiff noticed that the floor of tile, where the mat had been, and from which it had slipped six or eight inches, was "smeared," by which she meant it was apparently wet and soapy; that the remainder of the floor was dry. The plaintiff further testified, on cross-examination, that it was smeared, looked wet and soapy; that she would think it was wet; that she did not reach over and touch it.

It is undisputed that the rubber mat was placed upon the tiled floor, being neither countersunk, fastened nor otherwise secured. Plaintiff offered evidence that it was the general custom, under like circumstances, to countersink, secure or fasten such mats to prevent the tendency to slip when stepped upon as plaintiff stepped upon this mat. She also produced evidence that if such a mat is not so secured it will slide or slip upon a tile surface, with attendant danger to persons stepping thereon; that the danger would be greater if the floor underneath the mat were damp.

The plaintiff's evidence shows that the street was dry; that no moisture could have reached this mat from the rest room, or other place, and that none could have been "tracked" onto it by other customers of the bank. It was in evidence that the night janitor cleaned the floor of the banking room the night before; that he scrubbed it by pouring water on it and then mopped it with cleansing powder, for which purpose he first removed the mat; he remembered using the water and cleansing powder at that point the night before, but could not remember drying the floor at the place where the mat was; that he knew of no other way that floor could have been wet and soapy unless he left it in that condition the night before.

The defense was that no such custom existed of placing mats in countersunk or other secured positions; that the plaintiff admitted on four different occasions, immediately following her injury, to different employees of the bank, that it was her fault; that her heel had caught, because of the type of shoes she was wearing.

There is no dispute as to the extent of plaintiff's injuries, and no claim that the verdict is excessive.

The first assignment of error is that the trial court erred in sustaining plaintiff's challenge to two members of the panel of jurors, on *voir dire*, and in refusing to sustain defendant's challenge to a third member of the panel.

As to the first, it appeared that he not only had an account at defendant bank, but was at the time indebted to it; also, that the bank was the trustee of a fund of which he was a beneficiary. He expressed the opinion that he could try the case fairly and impartially.

The second said he had worked for corporations for twelve years, that since his bread came from corporations for twelve years, undoubtedly his sympathy would be with them; that that sympathy might influence him if he were a juror in a case where a corporation was a party.

The third juror was employed in a meat market which occasionally sold meat to Mrs. Madden, wife of the senior member of the plaintiff's counsel. He knew Mrs. Madden and also a Mr. Jones, who had some connection with Mr. Madden's office, but no connection with the law suit. He had occasionally sold them meat, but had no social acquaintenance with them. He swore that he could try the case fairly and impartially, and the fact that they were attorneys in the case would not cause him to favor their side of the case in any way.

The purpose of *voir dire* examination is to secure a jury of fair and impartial men. To this end, the trial court is vested with a large discretion in determining their fitness to serve. The *voir dire*

examination of the first two jurors is not fully preserved, but from what may be gathered from the record, their answers indicate a grave doubt of their fitness, and the trial court may not be convicted of error for sustaining challenges as to them. [Glasgow v. Street Railway, 191 Mo. 347; Quirk v. Met. St. Ry. Co., 210 S. W. 103; Burton v. Phillips, 7 S. W. (2d) 712.]

As to the third juror, the defendant's challenge was overruled, and it appears that the trial court also overruled plaintiff's challenge to three veniremen who were depositors of defendant bank. The casual business dealings between the juror's employer and the wife of counsel and someone in the attorney's office would be insufficient cause to disqualify him. The verdict of the jury was unanimous and hence the error, if any, was harmless. [Parlon v. Wells, 17 S. W. (2d) 528, 533.]

The appellant complains because the trial court permitted plaintiff to read from the deposition of witness Perkins. At the trial the witness gave evidence which was inconsistent with his statement in his deposition. He was the defendant's janitor, and the deposition was read to refresh his recollection. The manner of the examination of a witness rests largely within the discretion of the trial judge and unless the record discloses an abuse of discretion an appellate court will not interfere. There is nothing in the record to show that the trial judge abused his discretion in permitting the attention of the witness to be called to statements in his deposition. [Ashby v. Gravel Company, 111 Mo. App. 79.]

The defendant complains the trial court erred in allowing plaintiff to testify that the heel of the shoes she wore at the time of her fall was an ordinary heel, such as women ordinarily wear on the street. The objection here is that this invades the province of the jury. The plaintiff says that the question was answered before objection was made; that the objection at the trial was that it was leading, and the witness not qualified; and that she had already given the same testimony, without objection. We find all three of these suggestions to be correct; hence, the point is ruled against defendant. Moreover, the shoes were produced at the trial and the jury could determine the question from examination thereof.

Defendant next complains that the trial court limited it in its cross-examination of plaintiff, with reference to her allegations of injuries in a previous damage suit against a street railway company. An examination of the record discloses an objection by counsel for plaintiff to the form of a question, and that, thereafter, defendant's counsel was allowed to go fully into the allegations of the petition, without objection.

The next assignment of error is that the trial court erred in refusing to strike out the testimony of the witness Doyle as to the

general custom in other buildings of placing rubber mats so that they were countersunk, where the floor was smooth, as here. The basis for the objection is that it was not alleged. But the allegation was of general negligence, broad enough to cover any negligent act or omission of the defendant. Moreover, the objection and motion to strike out this testimony, because not within the issues, came after two witnesses had testified, without objection, as to conditions in other buildings. Even though general negligence was alleged, it was proper for the plaintiff to prove an act or omission constituting specific negligence. [State ex rel. v. Haid, 41 S. W. (2d) 789.]

The defendant next insists that the court erred in refusing to direct verdict in its behalf at the close of plaintiff's case and erred in refusing to direct verdict in its behalf at the close of the whole case. As to the first, it is insisted by plaintiff that defendant waived its right to present the point here for the reason that it thereafter offered evidence. [King v. Spitcaufsky, 28 S. W. (2d) 433.] But if the second request was correctly ruled, the ruling on the first request needs no attention.

As to the rubber mat, which slipped under plaintiff's tread, it is in evidence the mat had been at that step for a long time; that the tile floor beneath it was smooth; that the mat was neither countersunk, fastened nor otherwise secured; that it was the general custom, under similar circumstances, to countersink, fasten or otherwise secure such mats to prevent their tendency to slip; that a mat at the entrance of defendant's banking house was so countersunk; that if such mats are not secured or countersunk, they will slip or slide upon a tiled surface, when stepped down upon, as plaintiff stetpped here, endangering the safety of the person stepping thereon. Such danger would be enchanced by the presence of moisture under the mat. There was evidence that countersinking the mat would tend to prevent such slipping of the mat when stepped on, and. that unless it was countersunk or otherwise secured it would tend to slip whether there was moisture under it or not.

Defendant says there was no evidence of moisture under the mat. The evidence of plaintiff was that she looked, but did not touch the place that was apparently wet and soapy or "smeary." In the case of Proctor v. Poplar Bluff, 184 S. W. 123, plaintiff testified that she fell on a pavement in the dark, that she could not see the broken brick which caused her fall, but felt it, the converse of the case here. It was held in the latter case that evidence of the sense of touch alone, with other facts, in evidence, was sufficient to support a finding of the negligence alleged. Plaintiff's evidence that she saw that the floor beneath the mat was wet and soapy was sufficient to justify the submission. of the question to the jury.

Defendant also says that there was no evidence of knowledge of the defendant of the alleged wet and soapy condition beneath the mat. If, as plaintiff's evidence tended to prove, the condition was the result of the janitor's careless scrubbing of the floor the night before, the defendant was charged with knowledge of the condition. Since it was concealed by the mat, plaintiff could not be charged with contributory negligence in failing to observe and discover it.

Defendant further argues that the physical facts show that it could not have been caused by the mat slipping forward; that if it had done so, plaintiff would have fallen backward, instead of forward, as she testified. It cannot be declared as a matter of law that when plaintiff stepped down on the mat, with one foot on the step, and the forward foot went from under her she would have fallen backward, since her momentum and the failure of the forward foot to support her might well have caused her to pitch forward. This was a question for the jury.

Finally defendant says, on this point, that this was not a *res ipsa loquitur* case, and plaintiff had to prove specific negligence, and that she has failed so to do. While the plaintiff pleaded negligence in general terms, she offered substantial proof on two specific acts of negligence, and asked an instruction requiring a finding of both, before predicating a recovery thereon.

In support of its contention on this point, defendant cites a number of cases of injury to an invitee. We have examined them and find they do not apply to the facts of this case. The request for directed verdict was well ruled.

Defendant next complains of plaintiff's instruction No. 1. No authorities are cited by defendant in support of its contention. This court has ruled that under such circumstances an assignment of error is not reviewable. [O'Howell v. Miller, 11 S. W. (2d) 1068.] However, the criticism of the instruction relates chiefly to failure of proof and failure to follow the petition, both of which have been discussed. The instruction required the jury to find both of the acts of negligence of which evidence was offered by plaintiff conjunctively with the other facts necessary to a liability, thereby assuming for the plaintiff a greater burden than she was required to carry. Complaint is also made of the frequent use of the words "if so" and "if any," etc. If such terms were not used, defendant could properly insist that the instruction assumed controverted facts. It is not pointed out how such terms were confusing to the jury.

It is argued that the trial court erred in refusing to permit defendant to prove by its "oldest" employee that he never knew of anyone falling on the mat. The record shows that the witness testified, without objection, that he never saw anyone fall, nor had he

heard of anyone, except plaintiff, falling on the mat. There is no basis for the complaint.

Defendant contends that the court erred in refusing to permit its witness Allen to answer the question as to whether or not plaintiff told him her telephone number. The record shows that the witness did answer the question; that thereafter an objection was made to the form of the question, which objection was sustained. The answer, however, was not stricken from the record. The question was not of any importance.

It is contended by the defendant that it was error for the court to permit plaintiff's counsel to comment upon defendant's failure to produce its former employees, one of whom testified in deposition. The alleged error was not called to the attention of the court in motion for new trial, hence it is not here for consideration. Moreover, the objection made at the trial was that the argument was "improper." The objection was not sufficient. [Ternetz v. St. Louis Lime & Cement Company, 252 S. W. 65, 71.]

Assignment of error No. 14 also relates to alleged improper argument of plaintiff's counsel. No exception was saved to the ruling of the court upon the question presented by said assignment. The point is disallowed.

It is argued that the court erred in refusing to discharge the jury for improper conduct of counsel for plaintiff. No exception was saved to the action of the court in refusing to discharge the jury. Moreover, we find nothing in the record to warrant the contention that the conduct of plaintiff's counsel was improper.

What we have said disposes of all questions presented. The judgment is affirmed. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.