STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION, Plaintiff-Respondent,

v.

Dan McMURTRY and Alpha McMurtry, Defendants-Appellants.

No. 7453.

Springfield Court of Appeals.

Missouri.

July 14, 1956.

 

Robert L. Hyder, Ralph H. Duggins, Jefferson City, Richard D. Moore, West Plains, for respondent.

McDOWELL, Presiding Judge.

This is an action in condemnation brought in the Circuit Court of Howell County, Missouri, to acquire an easement across defendants' 280 acre farm for the purpose of constructing supplementary state highway O in Howell County. Commissioners appointed by the court reported damages in the sum of $300. Exceptions were filed by defendants which were tried before a jury and a verdict returned for $275. Defendants appealed.

The easement acquired contained 5.28 acres of new right-of-way, 1.84 acres of old right-of-way and 2.90 acres for drainage purposes.

The evidence offered showed that defendants' land was served by a good WPA road running east and west along the north boundary line of the farm and intersecting a public road at Lanton which leads to West Plains; that this farm was also served by a road west of defendants' buildings leading north to West Plains. Defendants testified that these roads were all-weather roads; that the WPA road passed to the south of defendants' house leaving from four to six acres of land on the north side; that the barn was on the south side of the road connected with about 100 acres of bottom land, improved, and just to the west of the barn was a deep well; that the balance of the 280 acres lay south of the bottom field. The evidence showed that defendants' farm was about a quarter and a half wide along which the road passed.

The easement condemned was a right-of-way 80 feet wide. It entered the farm near the northeast corner and followed the old road until it reached the point about 200 yards east of the dwelling where the road angled to the south of the barn leaving a strip about two acres wide where the barn

Green & Green, West Plains, for appellants.

was located and cutting the barn off from the bottom field and left the well on the south side of the new improvement.

The old road contained a wire fence on both sides and the evidence shows that defendants were forced to spend $441.20 for new fencing material, wire, gates and labor, together with what they could salvage from the old fences to fence the new right-of-way; that the new right-of-way destroyed an old house used for the storage of grain, which, defendant testified, was of the value of from $200 to $300, and it also destroyed a pond which defendant stated was of the value of $25.

The evidence showed that 2.90 acres of the farm was taken for drainage purposes over four different parcels of land; one parcel 50' long by 100' wide north of the right-of-way; one 40' x 160' south of the right-of-way; one 265' x 360' south of said right-of-way; that two of these parcels extended down into defendants' bottom field.

Defendant Dan McMurtry testified the farm was worth $10,000 immediately prior to condemnation and $8,000 immediately thereafter; that the bottom land was worth $50 per acre.

The evidence showed that in the construction of the road an underpass was made where the creek passed through the highway and in times of rain, water filled this pass preventing defendants' live stock from passing through it; that defendants' children attended school at Lanton and used this road. Defendant testified that he seldom traveled the new road running to the west. As to the new improved drainage ditches constructed by plaintiff in this improvement, defendant testified that the waters were gathered together and the old drainage was changed so as to force the water to go on to the bridge and into defendants' bottom land which cut ditches and injured the same.

Plaintiff's evidence was to the effect that the new improvement did not injure or damage defendants. Some of the witnesses stated that the new road would increase the value of the farm $1,000.

Plaintiff offered testimony that defendant, Dan McMurtry, offered to give the right-of-way. However, defendants' witnesses testified that the offer to give the right-of-way was made only if the new road was placed on the old right-of-way.

Plaintiff insisted on showing that defendant went to Jefferson City to see the Highway Department and to the County Court to get the new road constructed. It was plaintiff's contention that defendants were estopped to claim damages because of their efforts to secure this road. It was admitted that the land in question was owned by the defendants by the entirety.

We will refer to appellants as defendants and to respondent as plaintiff.

Defendants' first allegation of error complains that the court erred in excluding from the regular jury Miss Zora Bess.

■ The evidence was that Miss Bess informed the court that she had some feeling as to the defendants' rights in this case and asked the court to be excused from the jury. The court instructed her that she should disregard any feeling in the case and as to any other cases she might know about and render verdict solely on the evidence and under the instructions. The witness gave this testimony:

"A. Judge, it had nothing to do with any other cases or anything, it was the thought of taking some land of somebody they owe some money. It is the matter of taking land that somebody owns. I would rather not serve because you asked if we had any feeling whatsoever.

"Q. That would be something to be passed on by you if you serve? A. Yes, sir, but I prefer not to serve on it and more than that it is a very busy time in the office for me and I would like to be excused on that."

■ The court stated that the juror had made some statement about her having feelings in the matter and excused her. We find that the trial judge is vested with broad discretion in determining the qualifications of veniremen to sit as jurors and that his ruling should not be disturbed unless clearly and manifestly against the evidence. Moore v. Middlewest Freightways, Inc., Mo.Sup., 266 S.W.2d 578, 585. We hold there is no merit in this contention.

Defendants next complain of error in the court's refusal to discharge from the panel juror, Cliff Bryan, who was challenged for cause. It was contended that the qualifications of this juror showed him to be a cousin of Judge Bryan, a member of the County Court.

■ On voir dire examination the juror stated he had never heard of the case being tried; that he was not an employee of the Highway Department and had never been a party to a condemnation action. There was no showing that the juror was acquainted with the fact that the county court was to pay the damages, if any, awarded to defendants. Under the law we think there is no merit in this contention. Moore v. Middlewest Freightways, Inc., supra.

Defendants complain of error by the court in refusing to discharge from the jury Orville Kearley who was challenged for cause.

This contention is based upon the facts that the juror lived in the vicinity of the new road and had a relative who lived on the highway. In his voir dire examination the witness stated that he had talked to witnesses who presumed to know the facts as to this action and had heard the suit discussed quite a bit. He stated he had not formed or expressed an opinion and had no opinion at the time. When asked if he could try the case fairly and impartially for both the State and defendants, he stated he could. This witness, in answer to questions about whether or not he could try the case fairly and impartially, answered, "I think so."

■ We might not agree with the trial court as to his action in leaving this juror on the panel but, under the general rule followed in this State that the trial court is vested with broad discretionary powers in passing upon the qualifications of jurors, we are unable to agree that reversible error was committed. Some of the opinions of our courts have gone further and stated that where the verdict of the jury is unanimous, objections to the qualifications of the juror after verdict should not be considered error but, under the qualifications here as shown by the evidence, we cannot hold that the trial court abused his discretion in refusing the challenge for cause.

Under allegation of error No. IV, defendants complain that the court erred in refusing to strike certain testimony offered by plaintiff to show that Dan McMurtry, a defendant, urged the building of the highway on an entirely different route and that he offered to relinquish the right-of-way if such road was constructed on an entirely different route through the farm of defendants. And it was error to admit such evidence in the absence of evidence that McMurtry, at such time, knew the road was going over the present route, such evidence being inadmissible for any purpose; that the evidence was incompetent for a further reason that such farm was owned by an estate of entirety and there was no showing that the actions of Dan McMurtry were done with the knowledge and consent of his wife.

■ We agree with defendants' contention that a husband cannot bind his wife without her knowledge or consent to release her rights in land when owned by an estate by the entirety. Stewart v. Shelton, 356 Mo. 258, 201 S.W.2d 395.

An examination of the record shows that Dan McMurtry, a defendant, testified, on cross-examination and without objection, that he did not object to the new road but objected to where it was located; that he did not take it upon himself to secure this road. He testified he went with a group of

people to Jefferson City to aid in the securing of a road but not one that would go through his farm as this road was located. He said when he went to Jefferson City he didn't know where the road was to be located and he, at no time, agreed to give the right-of-way for the road in its present location; that he told the highway department he would give the right-of-way if they would stay on the north side of his barn and on his north property line. He said he didn't sign any relinquishments. He testified that when he went to Jefferson City there was no petition for the right-of-way signed by him and there was nothing said about him giving the right-of-way. All of this testimony was offered without objection. The first objection made was to this question:

"Q. Did you ever appear before the County Court to initiate a proceeding to obtain a road out there?"

The court asked plaintiff's attorney if it was his purpose to show that defendants agreed to give the right-of-way, and, if so, the objection would be overruled. Plaintiff's attorney stated it was his purpose to show that defendants agreed to give the right-of-way. Defendants' attorney then objected to this evidence and asked the court if he would direct the jury to disregard such testimony if plaintiff failed to show that defendant and his wife offered to give the right-of-way and the court agreed that if plaintiff did not so show he would strike out this testimony and instruct the jury to disregard it.

The testimony of the defendants and of the plaintiff's witnesses was to the effect that defendant, McMurtry, never, at any time, agreed to give the right-of-way for the purpose of constructing the road in its present location.

George Ball testified in behalf of plaintiff that he didn't think anybody knew exactly where the road was to run but that it was to run on or about the old road location and that was the petition for the road to that effect. He was asked if all of them agreed to give the right-of-way. Defendants objected to this question and the objection was sustained by the court and the answer ordered stricken. Defendants' attorney then objected because the testimony was highly prejudicial. The objection was overruled. Defendants' attorney then made this objection:

"The defendant again requests that the jury be discharged for the reason they question this man giving his right-of-way and it is highly prejudicial to the rights of this defendant and deprives them of a fair and impartial trial and object for the reason the Court failed to disregard it or reprimand Counsel for the Highway Department." No ruling was made.

■ We are unable to sustain this contention, first, because most of the objections made by defendants' attorney to evidence offered to show McMurtry's relations in securing the road location were by the court sustained. It further appears from the evidence that defendant, McMurtry, testified, without objection, to all of the facts of which defendants now complain. The motion to strike offered by defendants was to testimony which the court had ruled inadmissible and the court stated that there was nothing to strike. There was no affirmative testimony in the record that McMurtry ever offered to give the right-of-way for the road in its present location.

■■ The law is that a contradictory position of the defendant can be shown as an admission of the party to the suit against his interest. It is not admissible to establish the existence of special benefits, but that the jury might draw from such fact a conclusion that the defendant considered his lands would be materially benefited. State ex rel. State Highway Commission of Missouri v. Shain, 340 Mo. 802, 102 S.W.2d 666, 668; State ex rel. State Highway Commission v. Hoffmann, Mo.App., 132 S.W.2d 27.

There was no inconsistency shown in the case at bar. The evidence offered by plain-

tiff in attempt to make such a showing was no doubt damaging to the rights of defendants, but, under the record in this case, we are unable to convict the trial court of error. We think this matter could have been properly reached by instructions.

Under allegation of error No. V, complaint is made as to the court's refusal to give instruction No. 9. This instruction reads:

"The Court instructs the jury that the real estate in evidence is held by estate of entirety by Mr. and Mrs. McMurtry. You are therefore instructed that any statement made by Dan McMurtrey as to relinquishing right of way of such property is withdrawn from the consideration of the jury."

■ There is no merit in this contention for the reason that there is no testimony in the record that Dan McMurtry made any statement of relinquishing the right-of-way to the property involved so there was nothing to withdraw. The instruction is a mere abstract proposition of law and was properly refused.

Under allegation of error No. VI, it is contended that error was committed by the court's refusal of testimony of Dan McMurtry to the effect that the construction of the highway and of the drainage ditches caused his bottom lands to overflow and the land to be cut up; that this was a proper element of damage for the consideration of the jury.

The evidence shows that in the construction of the improvement two different drainage ditches were constructed extending from the highway south into the improved bottom land of defendants. The defendant testified:

"Q. About these easements of these ditches down through your place, state to the jury whether or not they have cut ditches down on the land there? A. Yes, sir.

"Q. During these two or three rains we had in the last three or four months state to the jury whether or not that cut up any of your bottom land?" (This was objected to as not relative to the issue and by the court sustained.)

"By Mr. Green: We offer to prove by this witness as part of his damages to his place the way the highway is constructed by their easements it has caused ditches and overflow to run across his bottom land as part of the damages in this case, by the construction of the highway as an element of damages."

It is contended by plaintiff that prior to the offering of the damages caused by the drainage defendant had testified that the reasonable value of his land prior to the taking was $10,000 and that the reasonable value of the land after taking was $8,000; that he testified that the elements of damage were fencing, a pond, a barn, gates, a bridge and cattle pass; that he then offered to show by the witness damages caused by the construction of ditches to the bottom land and objection was made that the testimony was not relevant, which objection was sustained. Plaintiff says this error, if any, was harmless for the reason that the estimate of damages to defendants' farm had been placed before the jury as the difference between $8,000 and $10,000 and that the issue in the case is a question of damages. It is contended that since defendants had already stated the amount of damages to be $2,000 that his testimony as to the damages for drainage caused by cutting up his farm would be double damages.

■ The measure of damages is the difference in the reasonable market value to the entire tract before and after the appropriation of the part actually taken for improvement. From a practical standpoint this is merely to say that the damages sustained are to be regarded as a unit, although made up of integral parts—the value of the land taken, and the injury to the remainder; but before damages may be recovered upon the theory of injury to the remainder, they must be direct and certain, at the time of the appropriation, since if they are but remote or speculative, they are too uncertain

to be taken into account in estimating the depreciation in the value of the land. Art. I, § 26, V.A.M.S.Const. of Missouri; City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 153; Kamo Electric Cooperative, Inc. v. Baker, Mo.Sup., 287 S.W.2d 858, 861; Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S.W.2d 850.

■ Plaintiff's contention that when defendant, McMurtry, testified that his property was of the value of $12,000 prior to the appropriation and $10,000 after the appropriation defendants were then deprived of the right to show the elements of damages making up such depreciation is wrong. Any elements of damage which result directly and are certain to be suffered because of the appropriation are admissible.

■ We cannot, however, sustain the contention of defendants because when they made their offering to prove this testimony, they did not secure a ruling of the court. Before we can convict the court of error for not permitting proof as to elements of damage the court must be apprised of what the nature of the proof is. For that reason, we rule against defendants on this allegation of error.

Allegation of error No. VII complains of the action of the trial court in permitting plaintiff, over the objections and exceptions of defendants, to question defendant McMurtry as to his travel on the road of the new highway to the west of the land in controversy in going to his work. It is contended that such evidence does not establish special benefits but was merely a showing of a common benefit to everyone who traveled the highway.

Plaintiff, in its brief, states: " * * * This line of examination and testimony was for the purpose of showing to the jury that by the new construction of this highway, there was conferred a special benefit upon the defendant's property. This was to further show the jury that the defendant was employed in town, and the superior means of

ingress and egress, as compared to the old road, was a special benefit to the defendant and his farm, due to the fact that because of his employment, and to a prospective purchaser, a better highway presumptively confers a special benefit or increase in the market value of the property."

This court held in State ex rel. State Highway Commission v. McCann, Mo.App., 248 S.W.2d 17, 22:

"We think the law is well settled that 'special benefits' are such as are peculiar to a particular tract of land, enhances the value of such property in a manner peculiar to it, and not common to and enjoyed by other tracts in the same neighborhood, no part of which is taken. Special benefits must be reflected in an increase of the market value of the land. State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338; State ex rel. State Highway Commission v. Lindley, 232 Mo.App. 831, 113 S.W.2d 132; City of Springfield v. Ellis, Mo.App., 97 S.W.2d 154; State ex rel. State Highway Commission v. Farmer's Estate, Mo.App., 68 S.W.2d 721; State ex rel. State Highway Commission v. Haid, 332 Mo. 606, 59 S.W.2d 1057.

"A 'general benefit', as applied to a person whose property is being condemned for a highway, is one common (though it may be in a greater or lesser degree) to all other landowners in the vicinity of such road, including those whose land is not taken as well as those whose land is partly taken. A landowner from whom some land is taken is chargeable with the value of special benefits but not the value of general benefits. To charge a tract of land with the value of general benefits is to require its owner to pay for a benefit common to others who are themselves exempt from such payments." (See cases cited.)

On page 23 of 248 S.W.2d of the opinion it is stated:

"But it is also the law that a benefit accruing to all lands similarly situated and bordering on a highway may, nevertheless,

be special as to each of them, provided, they are not also benefits accruing to lands in the community which do not border on the highway, and, consequently, no part of which is taken." (See authorities cited.)

Art. I, § 26 of the Constitution of Missouri, 1945, V.A.M.S., provides that private property shall not be taken or damages for public use without compensation but the compensation going to the landholder, whose property has been taken, may be paid in cash or by special benefits or by both.

It is held in State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338, 340, that the construction of an improved highway by reason solely of its physical proximity to tracts of land confer upon such land a special benefit. This is so because of the facilities and advantages caused by the highway.

 So, following this law, we hold that it was competent to show the nature of the improved road and the facilities and advantages afforded defendants' land caused by the construction of such improvement. We think that defendants would be permitted to show that under exceptional circumstances, as here, no special benefits were conferred but we think there was no merit to defendants' contention as stated.

Under allegation of error No. VIII, it is contended that instruction No. 1 given by the court is erroneous because such instruction assumes that there were special benefits and invades the province of the jury.

 We do not agree with this contention. Instruction No. 1 merely tells the jury that the burden of proof is upon plaintiff to show by the greater weight of the evidence special benefits, as described in other instructions, conferred upon defendants' land by the improvement and that the burden is upon defendants to prove by the greater weight of the evidence that they sustain damages in the taking of the land in excess of any special benefits the jury might find from all of the evidence which accrued to the defendants' land for the construction of the road. This instruction properly states the law, and, when read with other instructions given, could not in any way prejudice the rights of defendants.

Error No. IX contends that the court erred in giving plaintiff's instruction No. 3, which reads:

"The Court instructs you that in determining whether there is any damage to the defendant's land, you shall not take into consideration such inconveniences and disadvantages, if any, to the defendant as are the consequences of the lawful and proper use of the state highway in question in so far as the same are common to other landowners in the neighborhood, no portion of whose lands is taken for said state highway. Nor shall you consider any inconveniences, disadvantages, or damages which do not cause a decrease in the market value of the defendant's land."

We agree with defendants that this instruction is not based upon any evidence in the case.

Plaintiff cites State ex rel. State Highway Commission v. Watkins, Mo.App., 51 S.W.2d 543, a case in which this exact instruction was given. But in this case the record showed that in the trial a concrete road had been constructed and the defendant, over plaintiff's objection, testified that since the paving of the highway, the noise from the traffic thereon had greatly increased and that sometimes it kept him awake at night. The testimony was that this road was not a farmer's road but a road for use of busses and trucks and the court held that the instruction was proper under the evidence.

 In the case at bar there was no evidence to justify the giving of this instruction. It is merely an abstract statement of law which confused the jury and constitutes reversible error.

 Allegation of error No. X complains that the verdict of the jury was the

result of bias and prejudice. We think there was sufficient testimony in the case to justify the verdict of the jury. This alleged error is without merit.

The cause is reversed and remanded for a new trial for the errors pointed out in the opinion.

RUARK, J., concurs.

STONE, Judge (dissenting).

Concurring, as I do, in the *conclusion* reached in the principal opinion (although not in all that is written with respect thereto) that reversible error is not demonstrated in any other respect assigned by defendants, I am unable to agree that the cause should be reversed and remanded on the sole ground of alleged error in the giving of plaintiff's instruction 3—a point to which no authority is cited in defendants'-appellants' brief.

The "clear, specific, and simple provisions" [Fuchs v. Reorganized School Dist. No. 2, Gasconade Co., Mo., 251 S.W.2d 677, 678] of Supreme Court Rule 1.08(a) (3) plainly contemplate "a particularization in statement of the points relied upon *and the citation of authorities to the specific point to which they apply.*" [1] (All emphasis here-

in is mine.) Our appellate courts have held repeatedly, not only under our present rules [2] but also under previous rules,[3] that only those allegations of error which are properly presented, briefed and argued, *with citation of authorities and reasons,* should be considered; and, the requirement that authorities be cited is of such importance that it is not satisfied by directing attention to the cases in a footnote to an annotated statute or by reference to a key number in the digest.[4] Although numerous prior Missouri cases have dealt with the propriety of giving an instruction such as instruction 3 *(as was recognized in defendants' argument* and as will become apparent from subsequent discussion herein), the failure of defendants' counsel to cite any authority to this point left us with the alternative either of briefing this point ourselves [Evinger v. Thompson, 364 Mo. 658, 265 S.W.2d 726, 736], which it is neither our function nor our duty to do [Ambrose v. M. F. A. Cooperative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647, 651; Block v. Holly, Mo.App., 106 S.W.2d 963, 965], or of ruling this point on the not altogether trustworthy or approved basis of our recollection of what the prior case law on the subject had been or our judgment of what it should have been.

Obviously, the citation by *plaintiff-respondent* of three prior Missouri cases [5] (to

1. Wipfler v. Basler, Mo., 250 S.W.2d 982, 985(4); Carver v. Missouri-Kansas-Texas R. Co., 362 Mo. 897, 245 S.W.2d 96, 102(11); Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42–43(4).

2. Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1019(7); Lomax v. Sawtell, supra, 286 S.W.2d loc. cit. 43(5); Wattson v. James B. Welsh Realty & Loan Co., Mo.App., 266 S.W.2d 35, 37(2). Consult also Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564, 565 (1); Royal v. Thompson, Mo., 212 S.W.2d 921, 922(5); Atkinson v. Coca-Cola Bottling Co., Mo.App., 275 S.W.2d 41, 46(5).

3. Jones v. Peterson, 335 Mo. 242, 72 S.W. 2d 76, 83(4); Brown v. Alton R. Co., 236 Mo.App. 26, 151 S.W.2d 727, 747; Lach v. Buckner, 229 Mo.App. 1066, 86 S.W 2d 954, 960(3); Hart v. Missouri

State Life Ins. Co., 229 Mo.App. 607, 79 S.W.2d 793, 794(5); Murphy v. Fidelity Nat. Bank & Trust Co., 226 Mo.App. 1181, 49 S.W.2d 668, 671(16). See also O'Howell v. Miller, 222 Mo.App. 1168, 11 S.W.2d 1068, 1070; Francis v. City of West Plains, Mo.App., 226 S.W. 969, 970 (1).

4. Daugherty v. Maddox, 364 Mo. 240, 260 S.W.2d 732, 734(4); Atkinson v. Coca-Cola Bottling Co., supra, 275 S.W.2d loc. cit. 46; Block v. Holly, Mo.App., 106 S. W.2d 963, 965(4); Dalton v. Redemeyer, 154 Mo.App. 190, 133 S.W. 133, 135(4).

5. Missouri, A. & G. R. Co. v. Harris, Mo., 181 S.W. 34; State ex rel. State Highway Commission v. Watkins, Mo.App., 51 S.W.2d 543; State ex rel. State Highway Commission v. Stoddard Gin Co., Mo App., 62 S.W.2d 940.

one of which reference is made in the principal opinion), *approving the giving of an instruction such as instruction 3 or holding the refusal thereof to have constituted reversible error,* did not fill the vacuum in *defendants'-appellants'* brief and supply the citations of authority which, by Rule 1.08(a) (3), *defendants* were directed to furnish. Notwithstanding the fact that, with primary regard for the rights of litigants [Songer v. Brittain, Mo.App., 272 S.W.2d 16, 18], we frequently have briefed points which have had incomplete and inadequate treatment by counsel, nothing in the instant record suggested to me that the ends of substantial justice would be served by our undertaking legal research on the question under discussion, and I would have treated this point as abandoned. But, since the result announced in the principal opinion rests on this point alone, legal investigation has been motivated which has impelled my conclusion that, in any event, the case should not be reversed and remanded.

An instruction, such as instruction 3, has been given or refused in at least ten condemnation cases reviewed on appeal in this jurisdiction. In five of those cases,[6] the giving of such an instruction was approved either specifically or inferentially. In four of them,[7] the refusal to give such an instruction was held to have been reversible error. In a single instance [State ex rel. State Highway Commission v. Patton, 229 Mo. App. 331, 77 S.W.2d 857], the court said that *refusal* of an instruction of this character *was not error* where there was no evidence on which to base it. *But, diligent search has revealed no previous case in which the giving of such an instruction constituted reversible error.* In State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493, 494, where the refusal of an instruction similar to instruction 3 "was unquestionably error" although *"there was no direct evidence of inconveniences or disadvantages common to the landowners in the neighborhood"*, the St. Louis Court of Appeals appropriately commented, 74 S.W. 2d loc. cit. 494-495, that examination of the cases shows that our appellate courts have "uniformly approved instructions excluding from the consideration of the jury inconveniences and disadvantages, and benefits as well, common to the landowners in the neighborhood, *regardless of the state of the evidence with respect thereto,"* perhaps because in most condemnation proceedings, as in the Graham case, supra, such inconveniences and disadvantages [8] "readily suggest themselves to the minds of the jury from the facts in evidence" or from the language of some other instruction.

However, in my view of the instant case, it is wholly unnecessary to determine whether instruction 3 *should* have been given by

6. State ex rel. State Highway Commission v. Stoddard Gin Co., supra, 62 S.W. 2d loc. cit. 943(6); State ex rel. State Highway Commission v. Sharp, Mo.App., 62 S.W.2d 928, 930; Chicago Great Western R. Co. v. Kemper, 256 Mo. 279, 166 S.W. 291, 295-296; Sedalia, W. & S. Ry. Co. v. Abell, 18 Mo.App. 632, 637; Wyandotte, K. C. & N. W. Ry. Co. v. Waldo, 70 Mo. 629.

7. Missouri, A. & G. R. Co. v. Harris, supra, 181 S.W. loc. cit. 35; State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493; State ex rel. State Highway Commission v. Watkins, supra, 51 S.W.2d loc. cit. 545(2); State ex rel. State Highway Commission v. Manzer, 229 Mo.App. 287, 77 S.W.2d 123 (2).

8. Common inconveniences, sometimes called "general damages," properly excluded from consideration, are said to be, in railroad cases, smoke, noise, liability to frighten farm animals, and increased danger to life and limb from trains passing over a public road [Chicago Great Western R. Co. v. Kemper, supra, 166 S.W. loc. cit. 295; Wyandotte, K. C. & N. W. Ry. Co. v. Waldo, supra], and, in highway cases, "danger, noise, and other annoyances caused by increased traffic." State ex rel. State Highway Commission of Missouri v. Pope, 228 Mo.App. 888, 74 S.W.2d 265, 269. See also Wilson v. Kansas City, Mo., 162 S.W.2d 802, 805(3); State ex rel. State Highway Commission v. Hoffmann, Mo.App., 132 S.W.2d 27, 30(3); State ex rel. State Highway Commission v. Watkins, supra, 51 S.W.2d loc. cit. 545(1).

the trial court. For, agreeing (as I do) that there was no "direct evidence" of common inconveniences and that it would have been better for the trial court to have refused instruction 3, it by no means follows that the case should be reversed on appeal [Section 512.160(2), RSMo 1949, V.A.M.S.], since nothing is more firmly settled than the principle, frequently recognized and applied in condemnation cases,[9] that the giving of a so-called abstract instruction, which does not direct a verdict, will not constitute reversible error unless it appears that the complaining party has been prejudiced or that the jury could have been misled thereby.[10] "Even where a *verdict-directing* instruction is 'merely indefinite, ambiguous, or misleading, standing alone, and these defects are corrected by other instructions so that when all are read together the law of the case is sufficiently stated, then the error in the one instruction is not reversible.' State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351, 355(1, 2)." Killinger v. Kansas City Public Service Co., Mo., 259 S.W.2d 391, 396(8).

The sole question for determination by the jury in the instant case was one of damages. State ex rel. State Highway Commission v. Goodson, Mo., 281 S.W.2d 858, 861; State ex rel. State Highway Commission v. Mink, Mo.App., 292 S.W.2d 940. There is no suggestion that this issue was not submitted properly by so-called "measure of damages" instructions offered *by both plaintiff and defendants,* which permitted recovery by defendants of the difference, if any, between the fair market value of their property immediately before and immediately after condemnation. Consult State ex rel. State Highway Commission v. Goodson, supra, 281 S.W.2d loc. cit. 861–862. By *defendants'* instruction A, the jury were instructed not to consider *"benefits, if any,"* common to other lands in the neighborhood [cf. State ex rel. State Highway Commission v. Graham, supra, 74 S.W.2d loc. cit. 495]; and, by *plaintiff's* instruction 3, the jury were told not to consider *"inconveniences and disadvantages, if any,"* common to such other lands. That instruction 3 was "a correct declaration of the law applicable to cases of this character admits of no doubt." Missouri, A. & G. R. Co., v. Harris, Mo. (banc), 181 S.W. 34, 35. It neither directed a verdict nor assumed that there were common inconveniences; but it was rather in the nature of a cautionary instruction [DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 567], the giving of which usually is within the sound discretion of the trial court and does not afford ground for reversal unless there has been manifest abuse of such discretion. Daniels v. Brown, Mo., 266 S.W.2d 680, 687(6); West v. St. Louis Public Service Co., Mo., 236 S.W.2d 308, 313(13).

That the instructions must be read together and considered as a whole is, of course, as true in a condemnation proceeding [City of Cape Girardeau v. Hunze, 314 Mo. 438, 284 S.W. 471, 480(9), 47 A.L.R. 25] as in any other case [Welch v. McNeely, Mo., 269 S.W.2d 871, 878(20)]; and, whether instruction 3 was misleading depends upon how it would be understood by a jury of ordinarily intelligent persons *when read in connection with all of the other instruc-*

9. State ex rel. State Highway Commission of Missouri v. Haid, 332 Mo. 606, 59 S.W.2d 1057, 1058; State ex rel. State Highway Commission v. Williams, Mo. App., 263 S.W.2d 444, 447–449; State ex rel. State Highway Commission v. Leftwich, Mo.App., 263 S.W.2d 742, 746; State ex rel. State Highway Commission v. Bank of Lewis County, Mo.App., 102 S.W.2d 774, 777(1); State ex rel. State Highway Commission v. Watkins, supra, 51 S.W.2d loc. cit. 545(7).

10. Killinger v. Kansas City Public Service Co., Mo., 259 S.W.2d 391, 396(9); Cuddy v. Schenewark, Mo., 231 S.W.2d 689, 690–691; Benham v. McCoy, Mo., 213 S.W. 2d 914, 920(13); DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 566–567 (8); Cason v. Kansas City Terminal Ry. Co., Mo., 123 S.W.2d 133, 139(9); Steger v. Meehan, Mo., 63 S.W.2d 109, 111–112(6); Kleinlein v. Foskin, 321 Mo. 887, 13 S.W.2d 648, 654(5).

*tions in the case.*[11] Taken as a whole, the instructions in the instant case are harmonious and contain a complete exposition of the law necessary to guide the jury in arriving at a true and just verdict; and, in my opinion, the judgment should be affirmed even though, absent any "direct evidence" of common inconveniences, instruction 3, *standing alone,* might have been misleading.[12] By overruling defendants' motion for new trial which specifically presented that question, *the trial judge* indicated his belief that instruction 3 had not been prejudicial and misleading [cf. Machens v. Machens, Mo., 263 S.W.2d 724, 732; DeMoulin v. Roetheli, supra, 189 S.W.2d loc. cit. 567]; and if, as our Supreme Court has directed [Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, 453 (12)] and as we recently have avowed [Blackman v. Botsch, Mo.App., 281 S.W.2d 532, 536], the jurors in the case at bar are to be credited with common sense and discernment, *I* likewise am unable to conceive of their having been led astray by instruction 3. Compare Custer v. Kroeger, 209 Mo.App. 450, 240 S.W. 241, 244(5). That, in truth, the jury was not misled to defendants' prejudice is indicated, it seems to me, by their verdict awarding damages of $275 (within $25 of the award of the commissioners) notwithstanding the fact that defendant, Dan McMurtrey, *alone* testified that the fair market value of defendants' farm was less after the condemnation while *six* witnesses testified that, on the contrary, construction of the new highway had resulted in an increase in such market value.

Observing that, although the giving of abstract instructions is not approved, *"rarely, if ever, is a case reversed on that sole ground"* [Howard v. Fred Schmitt Realty & Investment Co., Mo.App., 7 S.W.2d 448, 451(7)], and believing that, "from the angle at which we consider the question, the giving of (instruction 3) could not be deemed error of sufficient dignity to warrant the granting of a new trial" [Mattocks v. Emerson Drug Co., Mo.App., 33 S.W.2d 142, 146], I am firmly of the opinion that, in reversing and remanding this case on the sole ground of alleged error in the giving of instruction 3, the principal opinion is in direct conflict with numerous prior decisions of our Supreme Court and Courts of Appeals, including those heretofore cited in footnotes 2, 9, 10, 11 and 12 to this dissent. Accordingly, I respectfully request that, under Article V, Section 10, Mo.Const. of 1945, 2 V.A.M.S., this case be transferred to the Supreme Court of Missouri.

11. Wade v. Kirksville College of Osteopathy and Sur., Mo., 270 S.W.2d 811, 814; Machens v. Machens, Mo., 263 S.W.2d 724, 732(7); Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, 453(11).

12. Gladden v. Missouri Public Service Co., Mo., 277 S.W.2d 510, 520(13); Nelson v. Tayon, Mo., 265 S.W.2d 409, 414(1); Higgins v. Terminal R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380, 387(20).